# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00189-CR

---

**Dean Edward Calhoun, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 207TH DISTRICT COURT OF COMAL COUNTY
### NO. CR2016-293, THE HONORABLE DIB WALDRIP, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

A jury convicted Dean Edward Calhoun of the third-degree felony offense of "bail jumping-failure to appear," and the district court assessed his punishment—enhanced by two prior, sequential, and final felony convictions—at twenty-five years' imprisonment. *See* Tex. Penal Code §§ 12.42 (d) (providing habitual-offender punishment range of twenty-five to ninety-nine years or life), 38.10 (defining offense of bail jumping and failure to appear). On appeal, Calhoun contends that he was "deprived of his constitutional and statutory right to be present at every stage of his trial." We will affirm the district court's judgment of conviction.

## BACKGROUND

Calhoun pleaded guilty in 2010 to the third-degree felony offense of assault-family violence with prior conviction. His eight-year sentence was suspended, and he was

placed on eight years' community supervision. In 2013, the State filed a motion to revoke Calhoun's community supervision, and in 2014, Paul Finley was appointed to represent him. Calhoun was released on bond in 2015.

Under the former practice of courts in Comal County, hearing notices were mailed to counsel for defendants, who were to notify their clients of the scheduled court hearings. In 2016, when Calhoun did not appear for a hearing on the motion to revoke, he was charged with bail jumping and failure to appear. The district court appointed James Millan to represent Calhoun on the bail-jumping charge, which proceeded to trial.

After voir dire and as the jury was leaving the courtroom for lunch, the State notified the district court that it wanted to discuss "an issue," its intent to call Finley as a witness "to testify about communications, specifically regarding notice that he gave to [Calhoun] to appear in court." The district court held a hearing on the matter which Calhoun did not attend, but no objection was made to his absence:

> [Prosecutor]: Judge, I have an issue I would like to take up, once they are—
>
> Court: Sure. Let the record reflect it's just the lawyers. And I guess the client is still here, isn't he?
>
> [Second-chair defense counsel]: No. I guess he was removed.
>
> Court: Is that going to be a problem?
>
> [Prosecutor]: I don't foresee it.
>
> Millan: I don't think for this issue.
>
> [Prosecutor]: Not for this issue.

Finley then informed the district court that he had consulted the state bar "to be clear on what [he] should do in a situation like this," and said that he would testify if compelled to do so. Finley also provided the court with authority holding that "an attorney's communication to the client of a trial setting is not subject to the attorney-client privilege." *Austin v. State*, 934 S.W.2d 672, 675 (Tex. Crim. App. 1996) (affirming bail-jumping conviction). After the prosecutor and defense counsel informed the district court that this was the first time either of them had tried a failure-to-appear case, the district court asked the attorneys for both sides to conduct some further research as to whether it was appropriate for the court to order Finley to testify.

On return from the break, the prosecutor and Finley again referenced the *Austin* decision, which the prosecutor stated was "very instructive." Acknowledging the case law from the Court of Criminal Appeals, defense counsel objected that the authority was wrongly decided:

> Well, Judge, look, I mean, my baseline issue is here I can't just let this go in without objecting to it. And I honestly think that the decisions by the Court of Criminal Appeals are wrong, and I think as to a fundamental issue as to attorney-client privilege. And so I will not—even with seeing the case law, I am still going to object to it, based on the baseline issue that I believe that attorney-client privilege should always be considered confidential.

The district court replied, "But that's not the law" and noted its obligation "under stare decisis to follow the majority" opinion from the Court of Criminal Appeals. Ultimately, the district court told Finley, "You're not getting away without testifying." The case proceeded to arraignment, with the jury and Calhoun present, followed by Finley's testimony.

When Finley was called, there was no objection to his testimony based on Calhoun's absence from the earlier hearing. Finley testified about when he was appointed to represent Calhoun, what Calhoun was charged with, and the notice that he provided to Calhoun

concerning the March 17, 2016 hearing on the motion to revoke. Finley stated that the court's notice was sent to his office, that shortly after receiving it he mailed a copy to the address he had for Calhoun, and that the copy of the notice was not returned to him. In response to the prosecutor's questioning, Finley testified that he had spoken with Calhoun the day before the hearing and that Calhoun had notice of it:

Q. And did you ever communicate the date of which [Calhoun] needed to appear in court?

A. With Mr. Calhoun?

Q. Yes, sir.

A. I spoke with Mr. Calhoun the day before that hearing.

Q. And how did you speak with him?

A. By telephone.

Q. And did you communicate the specific date and where he needed to be?

A. Yes, he was aware of the fact that there was a hearing date the next day here in court.

Q. Okay. So after you communicated that date to him, what happened the next day?

A. He was not here.

During cross-examination, Finley acknowledged that he was unsure whether he called Calhoun or whether Calhoun called him. When defense counsel asked if Finley confirmed whether Calhoun was living at the address where he sent the notice, Finley stated that he "didn't have anything to the contrary that he was not at that address." In response to further questioning from defense counsel, Finley testified that Calhoun knew about the setting, that Calhoun told him

4

during the phone call that he was in Dallas, and that Finley did not have information to seek more time from the court:

Q. And were there situations where you believe—are there situations where you believe Defendants may receive notice in such a manner and in such a time that it's unreasonable to expect them to be able to show up on time?

A. That can happen.

Q. Do you believe this is one of those cases?

. . . .

A. I don't know, to answer your question.

. . . .

Q. And knowing what you knew, do you think it might have been helpful to seek more time for [Calhoun]?

A. Well, I didn't have a reason as to why he was not here, so I didn't have something to take to the Court to say, 'Judge, can you extend this? Can you'—you know, 'He's ill, he's hospitalized.' I didn't have any information that would indicate what's going on.

. . . .

Q. Now, specifically in regards to the conversation with Mr. Calhoun—and you'd stated that you didn't really think there was any reasons for him to not be in court, but, based on your conversation with Mr. Calhoun, he told you he was in Dallas, didn't he?

A. Correct.

After Finley's testimony, both sides rested and closed, and the jury began deliberations.

The jury found Calhoun guilty of "bail jumping-failure to appear" as charged in the indictment. Calhoun chose sentencing by the judge, who conducted a punishment hearing, found two enhancement allegations true, and sentenced Calhoun to twenty-five years'

imprisonment. Calhoun filed a motion for new trial that was overruled by operation of law. This appeal followed.

## DISCUSSION

Calhoun contends that he was "deprived of his constitutional and statutory right to be present at every stage of his trial." Specifically, he contends that the district court erred by conducting a hearing in his absence when the State announced its intent to call Finley as a witness. Calhoun clarifies that he "is not challenging the trial court's ruling allowing his former attorney [Finley] to testify about what actions he took to notify [him] of his court date, and concedes that had he been present, he would have been unlikely to have prevented this testimony."

During a felony trial, a defendant has a constitutional and statutory right to be present. *See* Tex. Code Crim. Proc. art. 33.03 (providing that defendant "must be personally present at the trial" in all felony prosecutions); *Snyder v. Massachusetts*, 291 U.S. 97, 105-06, 107-08 (1934) (noting that "in a prosecution for a felony the defendant has the privilege under the Fourteenth Amendment to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge" and stating that "presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only"), *overruled on other grounds*, *Malloy v. Hogan*, 378 U.S. 1 (1964); *Routier v. State*, 112 S.W.3d 554, 575-77 (Tex. Crim. App. 2003) (noting defendant's constitutional and statutory rights to be present during trial); *Adanandus v. State*, 866 S.W.2d 210, 219 (Tex. Crim. App. 1993) (stating that defendant has constitutional right to be present when proceeding bears substantial relationship to opportunity to defend

6

himself). However, article 33.03, as applicable to this felony jury trial, provides that a defendant may absent himself from trial after jury selection:

> In all prosecutions for felonies, the defendant must be personally present at the trial . . . provided, however, that in all cases, when the defendant voluntarily absents himself . . . after the jury has been selected when trial is before a jury, the trial may proceed to its conclusion. When the record in the appellate court shows that the defendant was present at the commencement, or any portion of the trial, it shall be presumed in the absence of all evidence in the record to the contrary that he was present during the whole trial.

Tex. Code Crim. Proc. art. 33.03. Further, the Court of Criminal Appeals has ruled that there is no article 33.03 or due-process violation when defense counsel waives his client's right to be present and the defendant fails to show that counsel's waiver was erroneous, or that he was unaware of the proceedings, and that the trial court erred in accepting the waiver of his presence. *See Routier*, 112 S.W.3d at 576 (noting that record was silent as to why defendant was not present, that record showed defendant's attorneys waived her presence, and that defendant failed to show trial court's error in accepting her attorneys' waiver of her presence), 577 (concluding that defendant "failed to show that a fair and just hearing was thwarted by her absence, especially since her attorneys were present and waived her right to be present" and that without "a showing that the waiver was erroneous, we cannot say that the trial court violated the [defendant]'s federal due process right to be present for the proceeding").

Here, the record of the trial proceedings shows that Calhoun did not preserve his complaint about his absence from the hearing held after jury selection when the State announced its intent to call Finley as a witness. *See* Tex. R. App. P. 33.1(a)(1) (requiring record to show, as prerequisite to presenting complaint for appellate review, that party made complaint to trial court by timely request, objection, or motion stating grounds for ruling sought with sufficient

7

specificity to make trial court aware of complaint); *Aguirre v. State*, 695 S.W.2d 793, 794 (Tex. App.—San Antonio 1985, no pet.) (concluding that lack of timely objection during trial "waived" any article 33.03 complaint about defendant's absence from trial); *see also Daniel v. State*, No. 05-13-01258-CR, 2015 Tex. App. LEXIS 7485, at *5 n.2 (Tex. App.—Dallas July 21, 2015, no pet.) (mem. op., not designated for publication) (noting that defendant was required to object at trial to preserve his article 33.03 complaint and because he did not, any error based on that statute was "waived").  Although the record does not specify why Calhoun was not present at that hearing,[1] Calhoun does not contest that he was "personally present at the trial" before the jury was selected as required by article 33.03.  *See* Tex. Code Crim. Proc. art. 33.03 (providing that after that point, defendant may voluntarily absent himself from jury trial); *Miller v. State*, 692 S.W.2d 88, 91 (Tex. Crim. App. 1985) (noting that under article 33.03, "an accused's right to be present at his trial is unwaivable until such a time as the jury 'has been selected'").

Additionally, the record shows that defense counsel waived Calhoun's presence at that hearing, expressly denying that Calhoun's absence would be a problem.  *See Routier*, 112 S.W.3d at 576, 577.  Calhoun failed to show that a fair and just hearing was thwarted by his absence, especially because his attorneys were present for him and waived his constitutional right to be present.  *See Snyder*, 291 U.S. at 105-106; *Routier*, 112 S.W.3d at 577.  And while Calhoun contends that there is "no evidence" that he voluntarily waived or authorized his attorney to waive his presence, Calhoun has not shown that it was the district court's burden to challenge the basis for defense counsel's waiver, or that the district court erred by accepting defense counsel's waiver of Calhoun's presence.  *See Routier*, 112 S.W.3d at 576, 577; *see also*

---

[1] The record reflects only that the jury was released for lunch and that defense counsel "guess[ed]" Calhoun "was removed."

8

*United States v. Gagnon*, 470 U.S. 522, 528 (1985) ("The district court need not get an express 'on the record' waiver from the defendant for every trial conference which a defendant may have a right to attend."); *Escareno v. State*, 16 Tex. Ct. App. 85, 92 (Tex. 1884) (noting that if record showed that defendant was not present in court at time of hearing and if defense counsel acknowledged his waiver of defendant's right to be present, presumption is that "counsel was authorized by defendant to make the waiver, and that defendant is bound by it unless he shows that in fact he did not so authorize it").

From this record of the trial proceedings, we conclude that Calhoun failed to preserve his complaint that he was "deprived of his constitutional and statutory right to be present at every stage of his trial" and that defense counsel waived Calhoun's presence at the hearing held after jury selection when the State announced its intent to call Finley as a witness. Accordingly, we overrule Calhoun's appellate issue.

## CONCLUSION

We affirm the district court's judgment of conviction.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Baker and Triana

Affirmed

Filed: March 30, 2021

Do Not Publish